IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

ALICIA L. DAVIS
on behalf of RAHEEM C. GUNN,

        **Plaintiff,**

v.                                          Civil No. 4:05cv123

**JO ANNE BARNHART,**
**Commissioner of Social Security,**

        **Defendant.**

## OPINION & ORDER

This matter is before the Court on Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Docs. 15 & 16. Plaintiff brought this action on behalf of her child and pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) & 1383(c)(3), challenging the Defendant's final decision denying Plaintiff's application for Supplemental Security Income ("SSI") payments under section 1614(a)(3) of the Act, 42 U.S.C. § 1382c(a)(3), due to her child's disability.

### I. Procedural History

Plaintiff applied for SSI on February 3, 2003. Administrative Record (Doc. 7, "AR") at 88. Plaintiff's application was denied, id. at 56, and Plaintiff's application was again denied on reconsideration, id. at 64. An Administrative Law Judge ("ALJ") heard Plaintiff's request for review on October 7, 2004, id. at 453, and on October 29, 2004, found that Plaintiff was not entitled to SSI because Plaintiff's child was not disabled under the Act, id. at 12. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 19, 2005, thereby

rendering the ALJ's decision the final decision of the Defendant. Id. at 5.

Plaintiff commenced the present action by filing a motion to proceed in forma pauperis on July 28, 2005, which this Court granted on August 17, 2005. Docs. 1 & 2. Plaintiff's complaint was filed by the Clerk on August 17, 2005. Doc. 3. Initially, this matter was referred to a Magistrate Judge for a Report and Recommendation, Doc. 11; however, the Court rescinded its referral in order to expedite review of this matter, Doc. 18.

## II. Factual Background

Plaintiff's child was born in 1992 and was twelve (12) at the time of the ALJ's decision. AR at 14. Plaintiff's child has had sickle cell disease, also known as sickle cell anemia, his entire life.[1] Plaintiff was awarded childhood disability benefits in May 1994, but was found to be no longer disabled under the Act in September 1998. Id. at 38. Plaintiff's subsequent applications for SSI have all been denied. Id. at 47, 50 & 56.

Plaintiff's child has a history of headaches, nausea, and chest, arm, leg, and abdominal pain. In February 2000 he saw a doctor regarding the frequency of his headaches. Id. at 209-10. In June 2000 Plaintiff brought her child to the hospital room for stomach pain and left arm pain. Id. at 211. In December 2000 the child was taken to the emergency room with nausea, vomiting, diarrhea, and complications from dehydration. Id. at 219-26. The child was admitted to the

---

[1] Sickle cell disease "is the most common of the hereditary blood disorders. It occurs almost exclusively among black Americans and black Africans . . . In sickle cell disease, certain red blood cells become crescent-shaped . . . . These abnormal red blood cells, carrying an abnormal hemoglobin known as hemoglobin S, are fragile. A person who has sickle cell disease can become more likely to get infections because the damaged cells eventually clog the spleen. A severe attack, known as sickle cell crisis, can cause pain because blood vessels can become blocked or the defective red blood cells can damage organs in the body." Sickle Cell Crisis, http://www.emedicinehealth.com/sickle_cell_crisis/article_em.htm (accessed Sept. 20, 2006).

hospital with acute chest pain on June 14, 2001, and was discharged on June 16, 2001. Id. at 235-43. The child again had abdominal pain in October 2001. Id. at 245-53. Plaintiff's child stayed overnight at the hospital from January 14 to January 15, 2002, complaining of abdominal pain and fever. Id. at 254-63.

A childhood disability evaluation performed in January 2002 found that Plaintiff's child's impairment was not a disability under the Act. Id. at 264. Disability is determined by reference to six domains of functioning.[2] Of the six domains of functioning subject to evaluation, Plaintiff's child had no limitation on acquiring and using information, interacting and relating to others, and caring for himself. Id. at 266-67. The child had a less than marked limitation in attending and completing tasks and on moving about and manipulating objects. Id. The only marked limitation found was regarding the child's health and physical well-being. Id. at 267. This limitation was due to records of prior emergency room treatment and doctor's office visits. Id. The evaluation noted that:

> It is stated that [the child's] condition limits him as he has severe pain crisis [sic]. This is assessed to be partially credible. Records do not show that his condition has caused him to be hospitalized or that his pain crises seriously limit his overall ability to function.

Id. While Plaintiff does not dispute that this language was contained in the January 2002 childhood disability evaluation, Plaintiff does contest the accuracy of the report itself in light of her child's medical history. Doc. 15 at 5. A medical consultant's review of the January 2002 evaluation noted that Plaintiff's child had been hospitalized due to his sickle cell disease, but the review determined that the evidence in the child's file supported the January 2002 evaluation's

---

[2] See Part IV.B.1., infra.

conclusions.  AR at 270-72.

Plaintiff's child was seen regarding stomach and arm pain in February 2002, and regarding bed-wetting in November 2002.  Id. at 274-78.  He returned to the hospital in August 2002 with abdominal pains and a fever, and in May 2002 with abdominal pains.  Id. at 279-86

In January 2003, Plaintiff's child was admitted to the hospital with abdominal pain, constipation, and shortness of breath.  Id. at 314.  Plaintiff's child was diagnosed with respiratory distress.  Id. at 432.  Although laboratory tests were negative, the child was initially given antibiotics due to the risk of pneumonia and was discharged a few days later.  Id. at 432-34.  In February 2003, the child received an eye exam which showed good visual activity and only mild retinal changes.  Id. at 417.  The child had no retinopathy during a prior eye exam in January 2000.  Id. at 419.

Plaintiff completed a report regarding her child in February 2003, in which she stated that he was generally doing well.  Id. at 163-67.  She reported that he used eyeglasses, but had no problems with hearing, talking, communicating, or making progress in learning.  Id.  Her child also had no problems interacting with other people or with paying attention and focusing on a task.  Id. at 169 & 171.  She reported that his physical abilities and his ability to take care of his personal needs were limited when he suffered from sickle cell crises.  Id. at 168 & 170.

One of the child's teachers completed a report in February and March 2003 stating that, for the most part, Plaintiff's child had no problems or only slight problems in school.  Id. at 193-99.  The teacher reported no problems with vocabulary, reading and comprehending written material, comprehending and completing math problems, expressing ideas through writing, learning new material, and recalling and applying previously-learned material.  Id. at 194.  The

child had only slight problems with comprehending oral instructions, understanding and participating in class discussions, providing organized oral explanations, and applying problem-solving skills. Id. at 194. The teacher reported no or only slight problems with activities relating to attending and completing tasks, except for an "obvious problem" with focusing long enough to finish an assigned activity or task. Id. at 195. The teacher similarly reported no or only slight problems regarding the child's interacting and relating with others, except for an "obvious problem" with asking permission appropriately, noting that the child is very quiet and shy. Id. at 196. The teacher noted that the child had an "obvious problem" lifting objects and demonstrating strength, but otherwise had no problems moving about and manipulating objects. Id. at 197. Plaintiff's child had no problems caring for himself, except that he had a serious problem with knowing when to ask for help. Id. at 198. The teacher noted that the child missed a good amount of school and had weekly pain in his hands and legs, but otherwise functioned well. Id. at 199.

On February 18, 2003, Plaintiff took her child to the emergency room. Id. at 335. The child was diagnosed with an upper respiratory infection, fever, and a vasoocclusive crisis.[3] Id. at 335A. Plaintiff's child was discharged after receiving intravenous fluids, pain medication, and a prescription for an antibiotic. Id.

Another childhood disability evaluation was performed in April 2003. The evaluation found that the child's condition did not warrant an award of SSI, as only one of the six

---

[3] "A vasoocclusive crisis occurs when the microcirculation is obstructed by sickled RBCs, causing ischemic injury to the organ supplied. Pain is the most frequent complaint during these episodes, and it is ischemic in origin. Recurrent episodes may cause irreversible organ damage." Excerpt from Anemia, Sickle Cell, http://www.emedicine.com/emerg/byname/anemia-sickle-cell.htm (accessed Sept. 20, 2006).

domains—health and physical well-being—was marked. Id. at 420. An identical conclusion was reached in another childhood disability evaluation performed in July 2003. Id. at 426-29. In September 2003 the Plaintiff's child again went to the emergency room with nausea. Id. at 440-52.

### III. Summary of Administrative Proceedings

An ALJ heard Plaintiff's claims on October 7, 2004. Id. at 453-69. The ALJ informed Plaintiff of her right to be assisted by counsel at the administrative hearing, and of legal resources available to Plaintiff. Id. at 455-56. Plaintiff elected to proceed without legal representation. Id. at 456. The ALJ also explained to Plaintiff that the Welfare Reform Act of 1996 had changed the legal standard for childhood disability. Id. at 456-60. Plaintiff's child took the stand and said that he was doing well in school, getting A's, B's, and C's; answered further questions about school, friends, and activities; and indicated that he is sometimes unable to play basketball or take a bath because he is in pain. Id. at 462-66. The child stated that he had not been hospitalized in 2004, but that he had been "real sick" on approximately three occasions. Id. at 466. Plaintiff testified about her child's medical treatment and his symptoms. Id. at 467-68.

The ALJ found that Plaintiff's son suffers from sickle cell disease, which is a "severe" impairment under the applicable regulations. Id. at 14 (citations omitted). While the child's disease is severe, the ALJ found that "[t]here is no evidence to support a conclusion that [the child's] sickle cell disease . . . meets the criteria" established for determining whether sickle cell disease constitutes a disability under the Act. Id. (comparing Plaintiff's child's symptoms to Medical Listing 107.05 of the Code of Federal Regulations, Title 20, Part 404, Subpart P,

Appendix 1). The ALJ also found that Plaintiff's child's condition was not functionally equivalent to any of the other listed impairments. AR at 14. The ALJ found specifically that the child was "less than markedly impaired" as to acquiring and using information, attending and completing tasks, interacting and relating to others, moving about and manipulating objects, and caring for himself. Id. at 14-16. The ALJ did find that the child was markedly limited as to health and physical well-being. Id. at 17. However, the ALJ found this single domain of marked impairment to be insufficient to support a finding of disability under the Act. Id. The ALJ considered the childhood disability evaluations and gave these evaluations significant weight. Id. The ALJ found the testimony of Plaintiff and her child to be "generally credible, but not indicative of any disabling condition, as defined in the Social Security Act and regulations." Id. Therefore, the ALJ concluded that Plaintiff was not entitled to SSI. Id. at 18.

## IV. Standard of Review

### A. Review of the Commissioner's Decision

The role of the court in the administrative scheme established by the Social Security Act is limited to determining whether the final decision of the Commissioner (or the ALJ) is supported by substantial evidence. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "more than a mere scintilla" of evidence, but only such evidence "as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

The Court is not to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner or the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Craig, 76 F.3d at 589. Rather, "[w]here conflicting evidence allows

reasonable minds to differ as to whether the claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401. If substantial evidence exists for the Commissioner's findings, and those findings were reached through application of the correct legal standard, the conclusion must be affirmed. Craig, 76 F.3d at 589; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966); see also Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Conversely, a denial of benefits is not supported by substantial evidence if the ALJ "has not analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits." Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984)**.**

### B. Entitlement to Children's Disability Benefits

#### 1. Generally

Under the Social Security Act, disability benefits are paid to children who establish that they are disabled within the meaning of the Act. In order to be considered disabled, an individual under the age of eighteen must have

> a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(c). The applicable regulations require the Commissioner to engage in a three-step process to determine whether a child suffers from disability under the Act. 20 C.F.R. § 416.924. First, it must be determined whether the child is engaging in substantial gainful

activity. If not, it must then be determined whether the child suffers from a severe impairment or combination of impairments. If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment meets, medically equals, or functionally equals an impairment included in the Listing of Impairments in the Code of Federal Regulations, Title 20, Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 416.924.

Medical equivalence exists when "the medical findings are at least equal in severity and duration to the listed findings," and is shown by comparing "the symptoms, signs, and laboratory findings about [the child's] impairment(s) . . . with the corresponding medical criteria shown for any listed impairment." 20 C.F.R. § 416.926(a). When a claimant's impairment is specifically included in the Listing of Impairments, as is the case for sickle cell disease, a failure to show an impairment of the level of severity required by the listing may be excused "if [the claimant] ha[s] other medical findings related to his impairment that are at least of equal medical significance." 20 C.F.R. § 416.926(a)(1)(ii).

Functional equivalence is defined as an impairment of "listing-level severity;" that is, there must be "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain.[4] 20 C.F.R. § 416.926a(a). The six domains of functioning are: (1) acquiring and

---

[4] A "marked" limitation occurs when the

impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2). An "extreme" limitation occurs when the

using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In evaluating a child's ability to function under each domain, the relevant questions are whether the impairment(s) affects the child's functioning and whether the child's activities are typical of other children her or his age who do not suffer the same impairments. See 20 C.F.R. § 416.926a(b)(2).

### 2. Disability Due to Sickle Cell Disease

The Code of Federal Regulations, Title 20, Part 404, Subpart P, Appendix 1, provides the following pertinent Medical Listings:

107.00 Hematological Disorders

A. Sickle cell disease. Refers to a chronic hemolytic anemia associated with sickle cell hemoglobin, either homozygous or in combination with thalassemia or with another abnormal hemoglobin (such as C or F).[5]

Appropriate hematologic evidence for sickle cell disease, such as hemoglobin electrophoresis must be included. Vaso-occlusive, hemolytic, or aplastic episodes

---

impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3).

[5] Persons with two copies of the gene that causes sickle cell disease, one from each parent, are homozygous. Those with one copy of the gene are heterozygous, and do not have the disease. See Learning About Sickle Cell Disease, http://www.genome.gov/10001219 (accessed Sept. 20, 2006).

10

should be documented by description of severity, frequency, and duration.

Disability due to sickle cell disease may be solely the result of a severe, persistent anemia or may be due to the combination of chronic progressive or episodic manifestations in the presence of a less severe anemia.

Major visceral episodes causing disability include meningitis, osteomyelitis, pulmonary infections or infarctions, cerebrovascular accidents, congestive heart failure, genitourinary involvement, etc.

* * * *

107.05 Sickle cell disease. With:

A. Recent, recurrent, severe vaso-occlusive crises (musculoskeletal, vertebral, abdominal); or

B. A major visceral complication in the 12 months prior to application; or

C. A hyperhemolytic or aplastic crisis within 12 months prior to application; or

D. Chronic, severe anemia with persistence of hematocrit of 26 percent or less; or

E. Congestive heart failure, cerebrovascular damage, or emotional disorder as described under the criteria in 104.02, 111.00ff, or 112.00ff.

Code of Federal Regulations, Title 20, Part 404, Subpart P, Appendix 1, Medical Listings 107.00 & 107.05.

## V. Analysis

### A. Plaintiff's Arguments

Plaintiffs alleges several errors that entitle her to relief. First, Plaintiff argues generally that the ALJ "erred as a matter of law" by "summarily concluding" that the child's impairments failed to meet or equal the applicable medical listing. Doc. 15 at 10. Specifically, Plaintiff argues that the ALJ was required "to provide specific reasons for his findings that [her child's] Sickle Cell Anemia did not meet or equal a listing." Id. (citing Burnett v. Comm'r of Social

Security Administration, 220 F.3d 112, 119 (3d Cir. 2000); and Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).  Plaintiff argues, in the alternative, that the ALJ erred as a matter of law in finding that her child's sickle cell disease was not medically equivalent to the listing without obtaining the opinion of a medical expert on the question of medical equivalency.  Id. at 11 (citing Social Security Ruling 96-6p).  Plaintiff also argues, in the alternative, that the ALJ erred as a matter of law in finding that her child's impairments were not functionally equivalent to the listing, because the ALJ erroneously found that the child had a marked limitation in only one area of functioning, not the required two.  Id. at 12.

Second, Plaintiff argues that "[t]he ALJ erred as a matter of law in failing to properly consider and explain both the medical and non-medical evidence submitted before him."  Id. at 14.  Plaintiff supports her argument by pointing out that the ALJ only cited from two exhibits in his opinion and merely "summarily referenced" the remaining exhibits.  Id. (emphasis in original).  Plaintiff also argues that the ALJ must "provide complete credibility findings" as to her and her child's testimony.  Id. at 15 (citing Burnett, 220 F.3d at 122).

### B.  Sufficiency of the ALJ's Findings

Substantial evidence supports the ALJ's determination that Plaintiff's child's impairment does not meet, medically equal, or functionally equal either Medical Listing 107.05, or any Medical Listing.  All three childhood disability evaluations demonstrated that Plaintiff's child failed to satisfy the criteria set forth in the Medical Listing.  AR at 264, 420 & 426.  As one example, Plaintiff's child does not have severe anemia with a persistent hematocrit of twenty-six (26) percent or less: his hematocrit was 34.7 percent in September 2003, id. at 445, 32 percent in

January 2003, id. at 435, and 31.6 percent in June 2001, id. at 397.[6]

    There is no evidence that Plaintiff's child suffered recent, recurrent and severe vasoocclusive crises, major visceral complications, hyperhemolytic or aplastic crises,[7] congestive heart failure, cerebrovascular damage, or emotional disorder, as required by Medical Listing 107.05.[8]  The ALJ considered Plaintiff's child's impairment under all six functional domains.  AR at 15-17.  The ALJ analyzed in detail why the child's impairments did not amount to a disability under the Act.  Id.  The ALJ found the child to have a marked impairment only as to the domain of health and physical well-being.  Id. at 17.  Substantial evidence for this finding existed in the child's medical history.[9]

---

[6] "Hematocrit is a measurement of the proportion of blood that is made up of red blood cells.  The value is expressed as a percentage or fraction of cells in blood . . . .  The hematocrit rises when the number of red blood cells increases or when the plasma volume is reduced, as in dehydration.  The hematocrit falls to less than normal, indicating anemia, when your body decreases its production of red blood cells or increases its destruction of red blood cells or if blood is lost due to bleeding. See Hematocrit, http://www.labtestsonline.org/understanding/ analytes/hematocrit/sample.html (accessed Sept. 20, 2006).  "Between 6 to 12 years, the normal range is between 35 to 45%  . . . . For males between ages 12 and 18, the normal range is between 37 and 49%.  These values may be different at different hospitals depending on the equipment used to measure the hematocrit."  What is the normal range of hematocrit for children,  http://www.medfriendly.com/hematocrit.html (accessed Sept. 20, 2006).

[7] "Hyperhemolytic crisis, as the name suggests, is a condition characterized by an increased rate of destruction of RBCs in patients with SCD . . . .  Aplastic anemia (AA) occurs when erythropoiesis is suppressed, usually in the setting of infection."  Sickle Cell Disease, http://www.thrombosis-consult.com/articles/Textbook/15_sicklecell.htm (accessed Sept. 20, 2006).  "Erythropoiesis" means the production of new red blood cells in the bone marrow. Dorland's Illustrated Medical Dictionary 641 (30th ed., 2003).

[8] Nor does the evidence proffered by Plaintiff refute or call into question the detailed reasoning of the February 2000 ALJ decision upholding the 1998 termination of Plaintiff's SSI. AR at 33.

[9] According to the regulations, a marked limitation in this domain means the following:

    you are frequently ill because of your impairment(s) or have frequent exacerbations

13

The ALJ was not required to solicit the opinion of a medical expert in determining whether or not Plaintiff's child's impairments were medically equivalent to any Medical Listing under the regulations. Plaintiff argues that Social Security Administration Ruling 96-6p ("Ruling 96-6p") compels the ALJ to solicit the opinion of an expert on the question.[10] Ruling 96-6p holds that:

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> > When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
> >
> > When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Ruling 96-6p. Neither the ALJ, nor the Appeals Counsel, found that the case record suggested that a judgment of equivalence may be reasonable, nor was additional medical evidence received

---

> of your impairment(s) that result in significant, documented symptoms or signs. For purposes of this domain, "frequent" means that you have episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more. We may also find that you have a "marked" limitation if you have episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length of the episode(s) or its frequency) is equivalent in severity.

20 C.F.R. § 416.926a(e)(2)(iv). The child's medical history clearly shows frequent exacerbations sufficient to support a finding that the child's health and physical well-being is markedly impaired.

[10] Available at http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-06-di-01.html (accessed Sept. 20, 2006).

that called the childhood disability evaluations into doubt. Plaintiff's assertion that the ALJ erred as a matter of law by failing to solicit the opinion of a medical expert is, therefore, without merit. Because substantial evidence supports the ALJ's finding that Plaintiff's child's impairments are not functionally equivalent to a Medical Listing Plaintiff's contention that the ALJ erred as a matter of law in not consulting a medical expert is without merit.

### C. The ALJ's Credibility and Sufficiency Determinations

Plaintiff's second set of arguments challenge the weight afforded to particular exhibits by the ALJ, and the ALJ's determination of the credibility of Plaintiff and her child as witnesses. However, this Court is not to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner or the ALJ. Hays, 907 F.2d at 1456; Craig, 76 F.3d at 589.[11] The ALJ's credibility determinations, and the ALJ's assignment of weight to exhibits in evidence, are therefore beyond the scope of this Court's review. Plaintiff's second set of arguments are therefore also without merit.

### VI. Conclusion

For the reasons set forth herein, Plaintiff's motion is **DENIED** and summary judgment is **GRANTED** for Defendant. The decision of the Commissioner is **AFFIRMED**.

The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to Plaintiff and all counsel of record.

---

[11] Regardless, the ALJ found Plaintiff's and her child's testimony to be credible; however, even crediting their testimony, Plaintiff was not entitled to SSI. Plaintiff also suggests that the ALJ improperly limited her testimony. The record shows that this claim is plainly without merit. See AR at 467 (the ALJ told Plaintiff to "tell [him] what's not in here or I haven't asked [the child] that you think I need to know why [the child] is disabled"); id. at 468 (when asked if there was "[a]nything else," Plaintiff responded "[n]o.").

Plaintiff is advised that she may appeal from this Opinion and Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within sixty (60) days from the date of this Opinion and Order.  If Plaintiff wishes to proceed in forma pauperis on appeal, the application to proceed in forma pauperis is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

It is so **ORDERED**.

                                                /s/
                                    HENRY COKE MORGAN, JR.
                        UNITED STATES SENIOR DISTRICT JUDGE

Norfolk, Virginia
September 25, 2006